868 F.2d 69
 130 L.R.R.M. (BNA) 2682
 HOHE, Mary A.; Cassel, Timothy L.; Clover, Joseph F., III;
Clover, Vickie M.; Ebersole, Steven A.; Garman, Linda R.;
Hetzel, Arlene J.; Hench, Carol D.; Hill, Francis D.M.,
Jr.; Kantorczyk, Mark A.; Lebo, Nancy; Maher, Gerald J.;
Morris, Jeri; Reefer, Jack H., Jr.; and Young, Thompson
M., II, Appellants,
v.
Robert P. CASEY, Governor, Commonwealth of Pennsylvania;
Joseph L. Zazyczny, Secretary of Administration,
Commonwealth of Pennsylvania; G. Davis Greene, Jr., State
Treasurer, Commonwealth of Pennsylvania, the Commonwealth of
Pennsylvania; and Council 13, American Federation of State,
County and Municipal Employees.
 No. 88-5735.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 26, 1989.
Decided Feb. 16, 1989.
 
 John G. Milakovic, Thomas A. Beckley, Charles O. Beckley, II, Beckley & Madden, Harrisburg, Pa., Raymond J. LaJeunesse, Jr. (argued), National Right to Work Legal Defense Foundation, Inc., Springfield, Va., for appellants.
 Alaine S. Williams, Kirschner, Walters & Willig, Philadelphia, Pa., Richard Kirschner (argued), John J. Sullivan, Kirschner, Weinberg & Dempsey, Washington, D.C., for appellees Council 13 of the American Federation of State, County and Municipal Employees, AFL-CIO.
 Leroy S. Zimmerman, Atty. Gen., Thomas B. York, Deputy Atty. Gen., Gregory R. Neuhauser, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for appellees Robert P. Casey, Joseph L. Zazyczny, G. Davis Greene, Jr., and The Com. of Pa.
 Before GIBBONS, Chief Judge, and SEITZ and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 The plaintiffs appeal from the district court's order of September 15, 1988 denying their motion for a preliminary injunction. We have jurisdiction under 28 U.S.C. Sec. 1292(a)(1). Since the plaintiffs have failed to show that they would suffer irreparable harm absent the issuance of a preliminary injunction, we will affirm.
 
 
 2
 We review the district court's order under an abuse of discretion standard. Thus, its decision "must be affirmed unless ... [it] has abused its discretion, committed an obvious error in applying the law or made a serious mistake in considering the proof. An abuse of discretion is a 'clear error of judgment' and not simply a different result which can arguably be obtained when applying the law to the facts of the case." United Telegraph Workers, AFL-CIO v. Western Union Corp., 771 F.2d 699, 703 (3d Cir.1985) (citations omitted); see Klitzman, Klitzman and Gallagher v. Krut, 744 F.2d 955, 958 (3d Cir.1984). Although we will only summarize the facts briefly, inasmuch as they are set forth at length in the district court's opinion, see Hohe v. Casey, 695 F.Supp. 814 (M.D.Pa.1988), we are aware that "what may constitute irreparable harm in a particular case is, of course, dependent upon the particular circumstances of the case." Oburn v. Shapp, 521 F.2d 142, 151 (3d Cir.1975).
 
 
 3
 On July 28, 1988, the collective bargaining agreement between AFSCME Council 13 (Union) and the Commonwealth of Pennsylvania (Commonwealth) was amended to provide for fair share fee deductions,[1] authorized by section two of Act No. 84 of 1988 (Act 84), amending Pennsylvania's Administrative Code, 71 Pa.Stat.Ann. Secs. 51-732 (Purdon 1962 & Supp.1988).
 
 
 4
 Prior to the August 16, 1988, inception of fair share fee deductions, the Union, in accordance with the Act, mailed a notice between August 8 and August 12, 1988, to the approximately 18,000 fair share fee-payers, nonmembers of the union, it represented in collective bargaining with the Commonwealth. This notice provided information concerning the Union's calculation of the chargeable expenses comprising the fee, and the procedures it had established to enable fee-payers to challenge the fee. These procedures included a forty-five day objection period, one-hundred percent interest bearing escrow of challenged fees, and an impartial arbitrator to settle fee amount disputes.
 
 
 5
 The complaint in this case was filed on August 26, 1988, on behalf of the plaintiffs, fifteen Commonwealth employees, against the Commonwealth and its agents, and against the Union which was their exclusive bargaining representative, though they were nonmembers. Plaintiffs' compensation is, of course, subject to fair share fee deductions. The plaintiffs sought class certification. They asked for injunctive and declaratory relief under 42 U.S.C. Sec. 1983 against the implementation of Section Two of Act 84, certain portions of the collective bargaining agreement between the Commonwealth and the Union providing for fair share fee collection, and the fair share fee collection procedures adopted by the Union in its notice to nonmembers, all of which allegedly violate the First and Fourteenth Amendments. Plaintiffs also maintain that Act 84, the agreement, and the adopted procedures are facially unconstitutional.[2] In addition they asked for restitution.
 
 
 6
 When they filed their complaint, the plaintiffs sought a temporary restraining order and/or preliminary injunction to enjoin the implementation of Act 84, and specifically to enjoin the deduction of fair share fees authorized thereunder. On August 30, 1988, the district court issued a temporary restraining order against further collection of fair share fees. On September 9, 1988, the district court held a hearing on plaintiffs' motion for a preliminary injunction. At the hearing the Union bound itself to escrow one-hundred percent of all fair share fees deducted, not merely those challenged, until the impartial arbitrator's disposition of the challenges, and agreed to eliminate a certain portion of the fee[3] and refund that portion already collected, with interest. The district court denied the plaintiffs' motion by an order of September 15, 1988, which also lifted the August 30, 1988, temporary restraining order and permitted collection of the reduced fee, retroactive to August 16, 1988. Plaintiffs appeal from this order.[4]
 
 
 7
 Preliminarily we observe that "[t]o obtain a preliminary injunction, the moving party must demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987). It is clear, then, that "[a] party moving for preliminary injunctive relief must carry the burden of showing irreparable injury." Oburn, 521 F.2d at 150; see Sampson v. Murray, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir.1987); Roberts v. Van Buren Pub. Schools, 731 F.2d 523, 526 (8th Cir.1984). Moreover, "[e]stablishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.' " ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987) (quoting Continental Group, Inc. v. Amoco Chemical Corp., 614 F.2d 351, 359 (3d Cir.1980)).
 
 
 8
 The district court did not specifically mention the issue of irreparable harm but addressed the substantive issues and thus considered the likelihood of the plaintiffs' success on the merits. The court determined that the fair share collection procedures adopted by the Union as detailed in its notice to fair share fee-payers comported with the requirements set forth by the Supreme Court in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).
 
 
 9
 In Hudson, the Supreme Court concluded that "the constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the [fair share] fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." 475 U.S. at 310, 106 S.Ct. at 1078. These mandated fee collection procedures are prophylactic rules necessary to:
 
 
 10
 avoid the risk that dissenters' funds will be used temporarily for an improper purpose. '[T]he Union should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining.'
 
 
 11
 Hudson, 475 U.S. at 305, 106 S.Ct. at 1075; see Ellis v. Brotherhood of Ry., Airline and S.S. Clerks, 466 U.S. 435, 447, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984).
 
 
 12
 The First Amendment interest protected by Hudson's requirements is the nonmembers' "interest in not being compelled to subsidize the propagation of political or ideological views that they oppose." Hudson, 475 U.S. at 305, 106 S.Ct. at 1075;[5] See Andrews v. Educ. Ass'n of Cheshire, 829 F.2d 335, 339 (2d Cir.1987). Since the Union has escrowed the entire amount of all fair share fees deducted, from non-challengers as well as challengers, until disposition of the challenges by an impartial arbitrator, this interest is protected.
 
 
 13
 It is well-established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). But the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits. See Rushia v. Town of Ashburnham, 701 F.2d 7, 10 (1st Cir.1983). Rather the plaintiffs must show "a chilling effect on free expression." Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). It is "purposeful unconstitutional [government] suppression of speech [which] constitutes irreparable harm for preliminary injunction purposes." Goldie's Bookstore v. Superior Ct., 739 F.2d 466, 472 (9th Cir.1984). Accordingly, it is the "direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury." Cate v. Oldham, 707 F.2d 1176, 1188 (11th Cir.1983); see Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction. See City of Los Angeles v. Lyons, 461 U.S. 95, 112-13, 103 S.Ct. 1660, 1671, 75 L.Ed.2d 675 (1983).
 
 
 14
 Neither Hudson nor the relevant Supreme Court cases defining First Amendment injury can be construed as authority for the proposition advanced by the plaintiffs that the mere deduction and collection of fair share fees from nonmembers' paychecks comprises constitutional harm of a magnitude requiring a preliminary injunction insofar as those nonmembers may be deprived of money they might use to support their own political, ideological, or other purposes. The "chilling effect" referred to by the Supreme Court in Dombrowski resulted from threatened criminal prosecution of the plaintiffs authorized by state statute. In Elrod, the plaintiffs, sheriff's office employees, were forced to choose between their adherence to a political party of their choice and their continued employment. In this case the alleged impingement of the Union's fair share collection procedures on the plaintiffs' First Amendment rights simply fails to rise to that level of constitutional deprivation sufficient to show the irreparable harm necessary for the issuance of a preliminary injunction for " '[i]rreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate.' " A.O. Smith Corp. v. Federal Trade Comm'n, 530 F.2d 515, 525 (3d Cir.1976) (quoting Danielson v. Local 275, Laborers Union, 479 F.2d 1033, 1037 (2d Cir.1973)). The plaintiffs' remedy, should they succeed on the merits, will consist of restitution and/or monetary damages.[6] We also point out that in In re Arthur Treacher's Franchise Litigation, 689 F.2d 1137, 1145 (3d Cir.1982), we said that "we have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."
 
 
 15
 Finally we note that our holding conforms with Supreme Court precedent regarding the appropriate remedy after fair share/agency fee collection procedures have been found inadequate:
 
 
 16
 In determining what remedy will be appropriate if the appellants [i.e., nonmember fee challengers] prove their allegations, the objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities.
 
 
 17
 Abood v. Detroit Bd. of Educ., 431 U.S. 209, 237, 97 S.Ct. 1782, 1800, 52 L.Ed.2d 261 (1977). Thus the Supreme Court, in cases in which dissenting nonmembers of unions objected to deductions pursuant to collective bargaining agreements authorized by the Railway Labor Act, has rejected the granting of broad injunctions to provide the nonmembers with "interim relief against compliance with the financial obligations imposed by ... [collective bargaining] [a]greements." Brotherhood of Ry. & S.S. Clerks v. Allen, 373 U.S. 113, 120, 83 S.Ct. 1158, 1163, 10 L.Ed.2d 235 (1963); International Ass'n of Machinists v. Street, 367 U.S. 740, 771-73, 81 S.Ct. 1784, 1801-02, 6 L.Ed.2d 1141 (1961).[7]
 
 
 18
 The order of the district court of September 15, 1988 will be affirmed.
 
 
 
 [1]
 The term "fair share fee" is synonymous with the term "agency fee." "Under an 'agency shop' arrangement, a union that acts as an exclusive bargaining representative may charge non-union members, who do not have to join the Union or pay union dues, a fee for acting as their bargaining representative." Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 303 n. 10, 106 S.Ct. 1066, 1074 n. 10, 89 L.Ed.2d 232 (1986)
 
 
 [2]
 Although Act 84 requires the employer to deduct the fair-share fee from non-members' paychecks even in the absence of the establishment of constitutional collection procedures by the union (see Act 84, Sec. 2, adding Sec. 2215(d) to the Administrative Code), it is the procedures followed by the Union which are at issue, since "the courts will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently with the Constitution." Robinson v. State of New Jersey, 806 F.2d 442, 446 (1986), cert. denied, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). In any case, the plaintiffs' contention that the Union might under Act 84 obtain and spend fair share fees in other years before receiving challenges to them is irrelevant to the showing of immediate irreparable harm necessary for the granting of a preliminary injunction. (The district court addressed only "the procedural adequacy of the technical aspects of the Union's program and the notice sent to the plaintiffs." Hohe, 695 F.Supp. at 816)
 
 
 [3]
 The Union voluntarily eliminated that portion of the fee attributable to its AFL-CIO contributions
 
 
 [4]
 The plaintiffs' further motions for injunctive relief pending appeal, addressed to the district court and to this court, were denied
 
 
 [5]
 The Hudson Court specifically declined to adopt the position of the court of appeals in the case, that "the category of impermissible expenditures included all those that were not germane to collective bargaining, even if they might not be characterized as 'political or ideological.' " 475 U.S. at 299, 106 S.Ct. at 1072. The Court found it "unnecessary to resolve any question concerning non-germane, non-ideological expenditures." 475 U.S. at 304 n. 13, 106 S.Ct. at 1074-75 n. 13; see id. at 311, 106 S.Ct. at 1078 (White, J., concurring)
 
 
 [6]
 We observe that the standard remedy for violation of 42 U.S.C. Sec. 1983 is compensatory damages. "To the extent that Congress intended that awards under Sec. 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." Carey v. Piphus, 435 U.S. 247, 256, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978)
 In Roberts v. Van Buren Pub. Schools, 731 F.2d at 523, the plaintiffs brought an action under 42 U.S.C. Sec. 1983 alleging that the nonrenewal of their employment contracts was predicated upon violations of their First Amendment right of freedom of speech and association. In affirming the district court's denial of the plaintiffs' motion for preliminary injunctive relief, the court concluded that:
 the basis of appellants' complaint is the loss of their jobs and it is this injury which appellants seek to avoid through their request for preliminary injunctive relief. Should appellants prevail on the merits of their action they would be entitled to reinstatement and backpay relief. Because such relief would offer a complete remedy, the requirement of irreparable harm upon which a preliminary injunction must be based is not met.
 Id. at 526.
 
 
 [7]
 In Abood, the Supreme Court made it clear that "[a]lthough Street and Allen were concerned with statutory rather than constitutional violations," this distinction did not impact on its remedy analysis. 431 U.S. at 240-41, 97 S.Ct. at 1802. Of course our decision is not intended to intimate any opinion regarding the ultimate merits of plaintiffs' case. See National Land & Inv. Co. v. Specter, 428 F.2d 91, 100 (3d Cir.1970)