NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide General Insurance Company, Plaintiffs,

v.

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Defendant.

Civ. A. No. 1:CV–90–390.

United States District Court,
M.D. Pennsylvania.

June 20, 1990.

H. Lee Roussel, Alan R. Boynton, Jr., and Terry R. Bossert, McNees, Wallace & Nurick, and Jeffrey Bruce Clay, Harrisburg, Pa., for plaintiffs.

Gregory P. Miller, Miller, Alfano & Raspanti, Philadelphia, Pa., Richard D. Spiegelman, Office of Gen. Counsel, Executive Deputy Gen. Counsel, Richard J. Enterline, Ins. Dept. Legal Div., Victoria A. Reider, Pennsylvania Ins. Dept., William W. Warren, Jr., Chief of Litigation, Office of Gen. Counsel, Com. of Pa., Ernest R. Closser, III, Gregory E. Dunlap, Harrisburg, Pa., and Gaetan J. Alfano, and George R. Szymanski, Jr., Miller, Alfano & Raspanti, P.C., Philadelphia, Pa., for defendant.

MEMORANDUM

CALDWELL, District Judge.

We are currently considering the motion for preliminary injunction filed by plaintiffs, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, and Nationwide General Insurance Company (hereinafter collectively referred to in the singular as "Nationwide").

The complaint was filed on February 26, 1990, challenging certain provisions of Pennsylvania's new automobile insurance law, Act 6 of 1990, enacted on February 7, 1990. Defendant, Constance B. Foster, Pennsylvania's Insurance Commissioner, filed a motion to dismiss on March 15th. Shortly thereafter, the motion for preliminary injunctive relief and a supporting brief were filed on March 19th. Having stayed all proceedings in the meantime, on May 8, 1990, we denied the motion to dismiss. Thereafter, on May 14th, as a result of a telephone conference, we issued a scheduling order, requiring defendant's brief in opposition to plaintiff's motion by May 29, 1990, and setting the date for the hearing on the motion for June 8, 1990. On May 18, 1990, plaintiff filed a motion for a temporary restraining order which we denied on May 23rd. The June 8th hearing was held as scheduled and plaintiff's motion is ready for disposition.

The complaint attacks section 1799.7 of Act 6 on its face, and as applied, by invoking substantive and procedural due process claims and the taking clause of the fifth amendment. *See* U.S. Const. amend. V and XIV.[1] Nationwide complains that certain subsections have the effect of depriving it of a fair and adequate rate of return on its

---

1. The complaint also alleged an equal protection violation but this claim was not briefed, or pressed at the hearing, so we will not address it here.

automobile insurance policies or of any chance of securing such a rate. Section 1799.7(d) imposes an immediate freeze of rates at the level in effect on December 1, 1989. Section 1799.7(a) then requires Nationwide to file new rates to be effective on July 1, 1990. Subsections (b)(1) and (2) provide that they shall be reduced from the December 1, 1989 rates as follows: (1) a 22% reduction for an insured electing coverage only for "the limited tort option" provided for elsewhere in the Act; and (2) a 10% reduction for an insured electing the "full tort option." These rates cannot be increased between July 1, 1990 and June 30, 1991. *See* section 1799.7(e). Nationwide contends that the rate calculations are arbitrary and confiscatory and that it is not even receiving an adequate rate of return under the December 1, 1989 rates now in effect. It was, in fact, in the process of seeking approval for higher rates when the Pennsylvania General Assembly passed Act 6 imposing the freeze at the December 1, 1989 level.

Section 1799.7(b) contains the following language which is crucial to the disposition of this motion and ultimately of the entire case. Subsection (b)(3) provides as follows:

> An insurer aggrieved by the rate reductions mandated by this subsection may seek relief from the commissioner, which relief may be granted when the commissioner deems necessary in extraordinary circumstances.

Thus, Nationwide argues that Act 6 at best limits it to the allegedly inadequate rates in effect on December 1, 1989 because this language authorizes the Commissioner to grant relief only from the rate reductions mandated by subsection (b).

Nationwide is complying with Act 6. It made a compliance filing of new rates reflecting the 22% and 10% reductions and has also sought relief under section 1799.-7(b)(3) by filing an extraordinary circumstances petition, a written submission detailing why Nationwide believed that it should be exempted from the Act 6 reductions. The Department of Insurance denied the petition and has left in place the statutorily mandated reductions effective July 1, 1990. Nationwide has sought a full evidentiary hearing before the Commissioner in accordance with section 2005 of Act 6. This hearing has been scheduled for June 21, 1990, but no decision is required for thirty days after its conclusion. It appears then that the Act 6 rates will go into effect unless we grant injunctive relief.

The motion for injunctive relief requested that the Commissioner be enjoined from enforcing the rollback and freeze provisions and from taking any action prohibiting Nationwide from putting into effect fair, adequate and nonconfiscatory rate increases as it normally would have been permitted to do in accordance with the Casualty and Surety Rate Regulatory Act (hereinafter the "Rate Act"). 40 P.S. § 1181 *et seq.* (Purdon 1971 & Purdon Supp.1990–91). Plaintiff's reply brief, however, requested more limited injunctive relief and at the hearing plaintiff apparently sought only that the December 1, 1989 rates remain in effect until it can obtain review of the Commissioner's disposition of its extraordinary circumstances petition in the Pennsylvania Commonwealth Court, assuming an unfavorable outcome at the hearing currently pending before the Commissioner.

We have no occasion to consider the appropriate relief because we intend to deny the motion for a preliminary injunction.

Preliminarily, we observe that "[t]o obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Morton v. Beyer,* 822 F.2d 364, 367 (3d Cir.1987). It is clear, then, that "[a] party moving for preliminary injunctive relief must carry the burden of showing irreparable injury." *Oburn v. Shapp,* 521 F.2d 142, 150 (3d Cir.1975); *see Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974) ... [remaining citations omitted]. Moreover, "[e]stablishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a "clear showing of immediate irreparable injury.' " *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987) (quoting *Continental Group,*

*Inc. v. Amoco Chemical Corp.,* 614 F.2d 351, 359 (3d Cir.1980)).

*Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir.1989) (brackets added in part) (emphasis in original).

Based upon the Commissioner's interpretation of section 1799.7(b)(3), the extraordinary circumstances provision, we do not believe that Nationwide has shown that it will suffer irreparable injury. This section has also come to be known as the "constitutional 'safety valve.' " *See Subscribers of Erie Insurance Exchange v. Foster,* 174 M.D.1990, slip op. at 2 (Pa.Commw. June 4, 1990) (quoting *Keystone Insurance Co. v. Foster,* 732 F.Supp. 36, 38 (E.D.Pa. 1990)). The Commissioner has interpreted this section to authorize her to grant Nationwide whatever relief is required by the federal constitution from the rates imposed by section 1799.7. This would include giving Nationwide a fair and adequate rate of return and, if necessary, retroactive relief in the future if rates resulting from Act 6 are insufficient. In light of the agency's interpretation of the Act—which seems to cure the defects perceived by Nationwide— we do not see how we can grant the requested injunctive relief.

Nationwide argues that the Commissioner's interpretation is in clear conflict with the statutory language and cannot be left unchallenged in these proceedings. Nationwide contends that an insured could later contest the Commissioner's interpretation of her authority under the extraordinary circumstances provision and if the insured should prevail, Nationwide would be forced to refund premiums. We do not believe that Nationwide has standing to assert this argument. It has not pointed to any insured who would be ready to make such a claim. It may be that the Commissioner's interpretation will never be challenged in court or, if challenged, it will prevail. Any ruling we would make in the instant case would be advisory and speculative.

Nationwide has also argued that it would suffer irreparable harm because retroactive ratemaking is prohibited. Hence, if it prevailed in later proceedings, it would not, in any event, be able to recoup losses suffered from the current inadequate rates. The cases cited by plaintiff do support the general proposition that ratemaking by administrative agencies, either in the public utility area or for other regulated industries such as insurance, is not to be retroactive. *See, e.g., Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981); *Southern California Edison Co. v. FERC,* 805 F.2d 1068 (D.D.C. 1986). But the prohibition is usually statutory. It is not absolute. Retroactive ratemaking has been recognized in appropriate circumstances. *See, e.g., Bell Telephone Co. v. Pennsylvania Public Utility Comm'n,* 69 Pa.Commw. 554, 452 A.2d 86 (1983). We think one of those circumstances would include relief from statutorily imposed rates which are constitutionally inadequate. The state courts seem to be receptive to such an interpretation of section 1799.7(b)(3). *See Subscribers of Erie Insurance Exchange, supra. Cf. McKesson Corp. v. Division of Alcoholic Beverages And Tobacco,* —— U.S. ——, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (when a state does not provide a predeprivation remedy to contest an unconstitutional tax, due process requires that it provide a meaningful postdeprivation remedy).

We also reject plaintiff's argument that, even if it obtains higher rates in the future to offset the current ones, such relief would put it at a competitive disadvantage with other insurance companies, causing it irreparable injury when its insureds switch to its competitors. Plaintiff presented no probative evidence that this would happen. Gerald Visintine did testify on that issue but only in conclusional terms. Nationwide is not the only insurer seeking relief from the mandated rollbacks so others will find themselves in the same competitive situation. The evidence was speculative.

We conclude that plaintiff has failed to show irreparable injury and that the motion for injunctive relief can be denied on this basis alone. *See Hohe, supra.* We turn now to a brief discussion of the likelihood of Nationwide's success on the merits.

Nationwide's reply brief seems to argue that injunctive relief is appropriate because due process required that it have a full evidentiary hearing prior to the Commissioner's rejection of its extraordinary circumstances petition. Plaintiff has cited *Subscribers of Erie Insurance Exchange, supra,* in support of this argument. In that case the commonwealth court did permit the Erie insurance companies to continue to charge existing rates until the Commissioner gave them an extraordinary circumstances hearing in compliance with the Rate Act. *Subscribers,* however, is distinguishable. The insurers had not submitted a compliance filing before seeking relief under section 1799.7(b)(3) and the Commissioner had decided to reject such requests if no compliance filing had been made first. The court concluded that this interpretation of the Act was wrong. To implement the constitutional safety valve provided by the General Assembly, the Commissioner was ordered to consider the request for relief pursuant to procedures provided by the Rate Act which include a full evidentiary hearing. It seems that the court's decision was necessitated by the urgency of the situation. In the face of the July 1st deadline, the relief sought from the mandated rates had been rejected out of hand by the Commissioner without any determination on the merits of the request. It is significant that the case relied upon by the court, *Pennsylvania Coal Mining Ass'n v. Insurance Dept.,* 471 Pa. 437, 370 A.2d 685 (1977), did not itself require a full hearing in the circumstances of that litigation. Rather, written submissions were deemed sufficient when, as here, "economic or statistical questions [were] at issue." *Id.* at 454, 370 A.2d at 693. (brackets added).

In the instant case, unlike *Subscribers,* the Commissioner has given consideration to Nationwide's extraordinary circumstances petition and Nationwide has invoked procedures which would give it a relatively prompt review of that determination. We think this satisfies procedural due process.

Plaintiff has not cited any cases which would support a different conclusion.

Nationwide has also cited a California trial court decision in *Allstate Insurance Co. v. Gillespie,* No. C 744 670 (Los Angeles Co.1989). We think that case turned on the prolonged administrative process in California. We do not anticipate such a lengthy procedure in Nationwide's case.

Finally, we believe that Nationwide's reliance upon *Calfarm Insurance Co. v. Deukmejian,* 48 Cal.3d 805, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989), is misplaced. In *Calfarm,* the statute provided a freeze on insurance rates for a one year period following its enactment and permitted exceptions only if the insurer could prove insolvency. The California Supreme Court decided that this was too stringent a standard and that due process required a reasonable rate of return. In the instant case, section 1799.7(b)(3) has been interpreted to authorize constitutional rates.

In regard to the merits of the substantive due process and taking claims, we conclude that Nationwide has not carried its burden of showing a likelihood of prevailing on the merits. Generally, we were left unconvinced that the Commonwealth was incorrect about cost savings which would justify premium reductions such as those arising from the elimination of duplicate recoveries from different insurance coverages or a reduction in first party benefit claims.

We will issue an appropriate order.[2]

**2.** There are two other factors normally discussed in considering a motion for a preliminary injunction. *See In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137 (3d Cir. 1982). Because of our disposition of the two main factors, we do not see the necessity of addressing the other two.