**DUER SPRING & MANUFACTURING COMPANY, INC., Appellant,**

v.

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY, OFFICE OF EMPLOYMENT SECURITY, and Harris Wofford, Secretary of the Department of Labor and Industry and United Steelworkers of America AFL–CIO–CLC, Richard A. Berner and Mark Trimmer, (Intervenors in District Court).**

No. 90–3198.

United States Court of Appeals, Third Circuit.

Argued June 26, 1990.

Decided July 10, 1990.

Richard I. Thomas, Richard R. Riese (argued), Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellant.

Ernest D. Preate, Jr., Atty. Gen., Gloria A. Tischuk, Deputy Atty. Gen., Thomas F. Halloran (argued), Sr. Deputy Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Pittsburgh, Pa., for appellees.

Richard E. Gordon (argued), Grossinger, Gordon & Vatz, Pittsburgh, Pa., for intervenor, United Steelworkers of America, AFL–CIO CLC.

Before: SLOVITER and MANSMANN, Circuit Judges and FULLAM, District Judge.[*]

OPINION OF THE COURT

SLOVITER, Circuit Judge.

On this appeal from the district court's denial of plaintiff Duer Spring & Manufacturing Company's motion for a preliminary

_____

* Honorable John P. Fullam, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

injunction, we must decide whether Duer Spring demonstrated a significant likelihood that it would succeed on the merits in proving that Pennsylvania's unemployment compensation law is pre-empted by the National Labor Relations Act (NLRA).

We have jurisdiction from this order pursuant to 28 U.S.C. § 1292(a)(1), which permits immediate appeals from interlocutory orders refusing injunctions.

## I. *Facts*

The collective bargaining agreement between the United Steelworkers of America Local 1504 and Duer Spring expired on October 19, 1989. Duer Spring offered work to the employees under the terms and conditions of the pre-existing contract. The employees refused and initiated a work stoppage that continued until January 18, 1990, when the union made a written offer to Duer Spring to return to work on January 22 under the terms and conditions of the pre-existing contract and offering to provide a 72 hour notification before any new work stoppage. Duer Spring refused. The union made a second offer on January 23, 1990, extending the notice it would provide to five days. Duer Spring once again refused, and the union instructed its members to apply for unemployment compensation benefits to the Office of Employment Security of the Pennsylvania Department of Labor and Industry (Department).

The Department determined that the employees were entitled to benefits beginning on January 22, 1990 because at that time, when Duer Spring refused the union's offer to return to work under the pre-existing contract, it became responsible for initiating a constructive lockout. Under Pennsylvania law, a worker is entitled to unemployment benefits for any week in which his or her unemployment is due to a lock-out. 43 Pa.Cons.Stat.Ann. § 802(d) (Purdon 1964).

Duer Spring filed a complaint in federal court against the Department and Harris Wofford, Secretary of the Department of Labor, asking for a declaration that the relevant Pennsylvania statute was pre-empted by the National Labor Relations Act (NLRA) and the Supremacy Clause of the Constitution and asking for injunctive relief to prevent the state from paying unemployment benefits to the workers. App. at 3. The United Steelworkers of America, AFL–CIO–CLC filed a motion to intervene, which was subsequently granted by the district court.

■ After hearing legal argument on Duer Spring's motion for a temporary restraining order and preliminary injunction, the district court declined to hold an evidentiary hearing and denied Duer Spring's motion for a preliminary injunction on the ground that it had not established the required likelihood of success on the merits. Plaintiff appeals. We expedited the appeal, and listed the matter for oral argument. We review a district court's denial of a motion for a preliminary injunction for abuse of discretion or an error of law. *Kennecott Corp. v. Smith*, 637 F.2d 181, 187 (3d Cir.1980); *Hohe v. Casey*, 868 F.2d 69 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). "Because the preliminary injunction in this case rested on the district court's decision [concerning the constitutionality of a classification], a decision that did not turn on any factfinding, we consider here whether the district court committed an error of law. On questions of law, our scope of review is plenary." *Tustin v. Heckler*, 749 F.2d 1055, 1060 (3d Cir.1984).

## II. *Discussion*

The NLRA contains no statutory pre-emption provision. As in pre-emption analysis generally, " '[t]he purpose of Congress is the ultimate touchstone.' " *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)).

There are two distinct NLRA pre-emption principles. One, articulated in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (denominated the *Garmon* rule), protects the primary jurisdiction of the NLRB to determine what conduct is either protected or prohibited by the NLRA.

That principle is not implicated here, because there is no claim that Pennsylvania has sought to regulate or prohibit any conduct subject to the regulatory jurisdiction of the NLRB. *See Metropolitan Life,* 471 U.S. at 748–49, 105 S.Ct. at 2393–94.

■ Duer Spring invokes instead the other pre-emption doctrine, enunciated in, *inter alia, Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976), which protects against state interference with policies implicated by the structure of the NLRA and pre-empts state law concerning conduct Congress intended to be unregulated. *See Metropolitan Life,* 471 U.S. at 749, 105 S.Ct. at 2394.

Under the participatory state-federal scheme of Title IX of the Social Security Act of 1935, Pennsylvania law provides that an employee is ineligible for unemployment compensation for any week:

> [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed....

43 Pa.Cons.Stat.Ann. § 802(d) (Purdon 1964).

The interplay between the NLRA and a state unemployment compensation law was at issue in *New York Telephone Co. v. New York State Dep't of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), where a New York unemployment law authorized claimants who lost employment because of a strike, lock-out or other industrial controversy to collect benefits after an eight week waiting period. Accepting the finding of the district court that the statute "alters the balance in the collective bargaining relationship and therefore conflicts with the federal labor policy favoring the free play of economic forces in the collective bargaining process," *id.* at 526, 531–32, 99 S.Ct. at 1333, 1336–37, the Court nonetheless found that the state law was not pre-empted by the NLRA.

The plurality opinion, written by Justice Stevens and joined by Justices White and Rehnquist, relied on two grounds in finding no pre-emption. First, it stated that New York's unemployment compensation statute was entitled to deference as a law of general applicability to protect local interests and responsibilities. *Id.* at 539–40, 99 S.Ct. at 1340–41. Second, it concluded that the 1935 Congress, which passed both Title IX of the Social Security Act and the NLRA, intended to permit states to make the policy decision whether to provide strikers with unemployment compensation. *Id.* at 540, 99 S.Ct. at 1341. Justice Stevens noted that because Congress had rejected the suggestion that states be prohibited from providing benefits to strikers, *id.* at 541, 99 S.Ct. at 1341, it was undeniably aware of the possible impact of unemployment compensation on the bargaining process, *id.* at 544, 99 S.Ct. at 1343, but "decided to tolerate a substantial measure of diversity." *Id.* at 546, 99 S.Ct. at 1344.

Justice Brennan concurred in the result on the basis of the legislative histories of the NLRA and the Social Security Act. *Id.* at 546–47, 99 S.Ct. at 1344–45. Finally, concurring in the judgment, Justice Blackmun, joined by Justice Marshall, agreed with the plurality opinion "that Congress [had] decided to tolerate any interference caused by an unemployment compensation statute such as New York's." *Id.* at 549, 99 S.Ct. at 1345. Thus, a majority of the Court, after looking to the legislative histories, concluded that Congress intended to allow states to pay strikers unemployment compensation even if it altered the balance of bargaining power. For this reason alone, a majority of the Court found that the statute was not pre-empted. *See also Metropolitan Life,* 471 U.S. at 750, 105 S.Ct. at 2394 ("A majority of the Justices [in *New York Telephone* ] ... found the state law not pre-empted, on the ground that the legislative history of the Social Security Act of 1935 ... suggested that Congress had decided to permit a State to pay unemployment benefits to strikers.").

Duer Spring attempts to distinguish New York's statute from Pennsylvania's by arguing that the Pennsylvania law does not

act as an unemployment compensation law. It argues that because "Pennsylvania has expressly 'designed' its rule of law in order to 'foster a climate during the period between contracts conducive to good faith negotiations on an equal basis,'" Brief for Appellant at 12 (citing *Local 730, United Ass'n of Journeymen v. Unemployment Compensation Board of Review*, 505 Pa. 480, 480 A.2d 1000, 1006 (1984)), the statute is therefore pre-empted.

The legislative purpose behind Pennsylvania's unemployment compensation laws is clear:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employees during periods when they become unemployed through no fault of their own.

43 Pa.Cons.Stat.Ann. § 752 (Purdon 1964).

It is true that the Pennsylvania law differs from New York's in that "'the purpose of [Pennsylvania's] unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own.'" *Grandinetti v. Unemployment Compensation Board of Review*, 87 Pa.Cmwlth. 133, 486 A.2d 1040, 1044 (1985) (quoting *Local 730*, 480 A.2d at 1002), *alloc. den.*, 518 Pa. 628, 541 A.2d 1139 (1988). Therefore, the Pennsylvania courts must decide "whether a work stoppage resulted from a strike or a lock-out ... [by determining] which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Id.* Pennsylvania courts have adopted the concept of a constructive lock-out. This includes the situation, such as occurred here,

when a work stoppage follows the employer's rejection of the union's offer to work under the terms of the last expired collective bargaining agreement. *See High v. Unemployment Compensation Board of Review*, 505 Pa. 379, 479 A.2d 967 (1984); *Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 417 A.2d 205 (1980); *Unemployment Compensation Board of Review v. Sun Oil Co.*, 476 Pa. 589, 383 A.2d 519 (1978), *appeal dismissed*, 440 U.S. 977, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979); *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968); *Erie Forge & Steel Corp. v. Unemployment Compensation Board of Review (Vrotney)*, 400 Pa. 440, 163 A.2d 91 (1960).

Nonetheless, the underlying basis of Pennsylvania's policy to encourage the continuation of employment is merely to avoid "the economic insecurity due to unemployment which is the fundamental objective of the Unemployment Compensation Law," *Local 730*, 480 A.2d at 1005. While it is true that any award of unemployment compensation law may keep bread in the mouths of the children of the unemployed workers and thereby affect the conduct of the parties to a labor dispute, Pennsylvania's statute no more regulates that conduct than did the New York statute considered in *New York Telephone*.

As the Court found in *New York Telephone*, Congress intended to tolerate an alteration in the balance of power through the payment of unemployment insurance. Of particular importance is Justice Steven's reference in *New York Telephone* to Congress' intent to give "the several States ... broad freedom in setting up *the types of unemployment compensation* that they wish." 440 U.S. at 537, 99 S.Ct. at 1339 (emphasis added). The fact that Pennsylvania's scheme is different than New York's is not dispositive. What is more important is that neither regulates the conduct of the parties in the dispute, although they both ameliorate the effect on the workers of the dispute to some extent.

Duer Spring argues that Pennsylvania's focus on determining which party upset the

status quo conflicts with the freedom to strike or lockout at the expiration of an existing contract as set forth in section 8(d) of the NLRA. Pennsylvania has chosen to make the strike/lock-out distinction on the basis of the status quo, a neutral objective standard which does not tilt the scale in either direction. Thus we intimate no opinion on the effect of an unemployment compensation scheme that conditioned benefits on a different basis related to the negotiating stance of the parties.

We conclude that the district court did not err as a matter of law in holding that Duer Spring's attempts to distinguish the application of Pennsylvania law from the New York law are not likely to succeed. Because Duer Spring has not shown the requisite likelihood of success on the merits necessary to receive a preliminary injunction, *see Kennecott Corp.*, 637 F.2d at 187, the court did not abuse its discretion in denying the preliminary injunction.

### III. *Conclusion*

For the reasons stated above, we will affirm the order of the district court.