622 F.2d 651
 6 Media L. Rep. 1454
 Mildred AEBISHER and Muriel Gruff, Plaintiffs-Appellants,
v.
Bernard RYAN, individually and in his official capacity as
Principal, Oldfield Junior High School,
Harborfields Central School District, et
al., Defendants-Appellees.
 No. 691, Docket 79-7591.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 23, 1980.
Decided June 2, 1980.
 
 Nancy E. Hoffman, New York City (James R. Sandner, New York City, on brief), for plaintiffs-appellants.
 Lawrence W. Reich, Garden City, N. Y. (Wager, Winick, Ginsberg, Ehrlich, Reich & Hoffman, Garden City, N. Y., on brief), for defendants-appellees.
 Before OAKES, VAN GRAAFEILAND and NEWMAN, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 The issue in this case is whether appellees, public school officials, have violated the First Amendment rights of appellants, public school teachers, by reprimanding them for speaking to the press. We believe that appellants' claims of First Amendment violations created genuine issues of material fact which precluded the granting of summary judgment in appellees' favor and reverse the judgment summarily entered below.
 
 
 2
 Appellant Muriel Gruff has been a tenured teacher at Oldfield Junior High School in the Harborfields Central School District, Harborfields, New York, since 1971. On June 16, 1977, a fourteen-year-old female student attacked Mrs. Gruff as she attempted to expel the student from her classroom for disorderly conduct. The student dragged appellant into the hallway, scratching and beating her about the face until passersby came to her rescue. Mrs. Gruff suffered facial scratches and scalp wounds and allegedly permanent injuries to her neck and thumb. As a result, she did not return to Oldfield to teach for the remaining four days of the school year.
 
 
 3
 Shortly following the assault, a reporter for The Long Islander, a local weekly newspaper, telephoned Mrs. Gruff concerning the incident. Mrs. Gruff discussed it in general terms without revealing the age or identity of the student. The reporter also contacted appellant Mildred Aebisher, who is a tenured social studies teacher at Oldfield as well as the president of the teachers union of the Harborfields Central School District. Mrs. Aebisher discussed the incident with the reporter without revealing the student's identity.
 
 
 4
 On June 30, 1977, the news report that spawned this litigation appeared in The Long Islander.[1] The article accurately reflected the substance of the reporter's conversations with appellant and also with appellee Robert Johnson, the Superintendent of the school district.
 
 
 5
 When appellants returned to Oldfield Junior High in September of 1977, they were summoned separately to the office of the school principal, appellee Bernard Ryan. Ryan stated that in his view appellants had acted unprofessionally and with poor judgment in discussing the attack with a reporter. At subsequent meetings on October 11, 1977, Ryan delivered to each appellant a letter criticizing that appellant's conduct as unprofessional.[2] These "letters of reprimand", as the parties have termed them, have been placed permanently in appellants' personnel files.
 
 
 6
 Following unsuccessful attempts to have the letters removed from their files, appellants consulted an attorney. On December 8, 1977, the attorney wrote to Ryan, Johnson, and all the members of the school board, also appellees herein, informing them that appellants viewed the letters of reprimand as infringements of their constitutional rights and their statutory rights under the New York Education Law. On January 6, 1978, Superintendent Johnson, replying on behalf of all appellees, stated that appellants had not been disciplined and that the District disagreed with the conclusions contained in appellants' letters.
 
 
 7
 Appellants then filed the present action under 42 U.S.C. §§ 1983 and 1985, alleging conspiracy to violate and violation of their First Amendment free speech rights and their Fourteenth Amendment due process rights. They sought declaratory and injunctive relief, the removal from their files of the October 11, 1977 letters, formal public apologies from all appellees, and monetary damages. Appellees moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Finding that the essential facts were not in dispute, the district judge treated this as a Rule 56 motion for summary judgment and granted the motion, holding that appellants' comments to The Long Islander were "sufficiently connected to daily school affairs so as to justify the minimal discipline imposed . . . ." We conclude that the foregoing largely undisputed chronicle of events raised other factual issues that should not have been resolved in such summary fashion.
 
 
 8
 We begin our discussion of the applicable law by noting the traditional reluctance of federal courts to intervene in conflicts that arise in the daily operation of the public schools. Only where those conflicts "directly and sharply implicate basic constitutional values" is intervention warranted. Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968); see Wood v. Strickland, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 ('1975); East Hartford Education Association v. Board of Education, 562 F.2d 838, 856, 857 (2d Cir. 1977) (en banc) (reversing panel majority). Although public school teachers may not be required to forgo their First Amendment rights as a condition of employment, Tinker v. Des Moines School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), their free speech rights are not absolute. Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979). When those rights are at issue, the court must balance "the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); see Givhan v. Western Line Consolidated School District, supra, 439 U.S. at 414, 99 S.Ct. at 696.
 
 
 9
 The district judge adopted this balancing test as the proper standard for evaluating appellants' claims and proceeded to strike the balance in favor of appellees. He did this largely by belittling the prejudicial effect of the letters of reprimand. He found that the letters constituted a minimal restriction of appellants' freedom of speech, that they would not seriously affect appellants' job security and professional reputation, that they did not greatly disturb appellants' life, liberty, or property, and that injury was inflicted more upon appellants' pride and dignity than against their person or property. In substance, the court accepted appellees' contention that the letters of reprimand were merely expressions of Ryan's personal opinion or dissatisfaction and did not constitute an actionable restriction on appellants' right to speak.
 
 
 10
 When appellees' counsel urged that contention during oral argument in this Court, he was asked why, if the letters of reprimand had so little meaning and effect, they were not removed from appellants' files, thus obviawting the need for this costly litigation. The refusal of the school district to take this simple step indicated to the Court that the presence of the letters in appellants' files might be more prejudicial than appellees were willing to concede. Our concern was intensified by Mrs. Gruff's testimony on deposition that Ryan himself had described his letter to her as an "official reprimand" and had told her "in a very threatening tone" that if she ever went to the press again, he would be very angry. We were led inevitably to the conclusion that the case was not ripe for summary disposition and that it should be returned to the district court for further development of the facts.
 
 
 11
 Where the use of coercive power is threatened, First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech. Reporters Committee for Freedom of Press v. American Tel. & Tel. Co., 593 F.2d 1030, 1052 (D.C.Cir.1978), cert. denied, 440 U.S. 949 (1979). The exercise of First Amendment freedoms may be deterred almost as potently by the threat of sanctions as by their actual application. NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Guided by these admonishments, we reverse. We remand the matter to the district court so that it may factually determine the practice and procedure relative to the so-called letters of reprimand and the practical effect and consequence of their presence in plaintiffs' employment files. If the facts as found indicate that the letters and Ryan's comments have a chilling effect sufficient to trigger First Amendment inquiry, the district court must then ascertain the facts necessary for application of the Pickering balancing test. The matter is remanded to the district court so that the parties may develop a record in support of their disparate contentions.
 
 
 12
 Reversed and remanded.
 
 
 
 [1]
 The article read in full as follows:
 Greenlawn Suffolk County police report they are investigating an alleged assault upon an Oldfields Junior High School teacher by a 14-year old female student.
 Harborfields superintendent of schools Dr. Robert Johnson, said this week that the student had been suspended "immediately" after the incident which allegedly occurred on Thursday, June 16.
 According to the Second Precinct police, the art teacher, Mrs. Muriel Gruff pressed charges against the student after the incident. The name of the student is being withheld because of her age.
 Mrs. Gruff said that the student was "disruptive in the classroom," and had been asked to leave. According to Mrs. Gruff, the student refused to leave and the teacher says that she then attempted to direct the student out of the room. The alleged assault then took lace according to the report.
 "She grabbed my hair and bent me over in half with one hand, and ripped at my face and head with the other," Mrs. Gruff said. "We ended up in the hallway, where a passing student attempted to stop the girl from scratching me. Then one of the other teachers intervened and was able to stop her," she added.
 On Monday, 10 days after the incident Mrs. Gruff said she is still under "a doctor's care" from injuries resulting from the alleged assault.
 Mrs. Mildred Aebisher, a teacher in the same school, and the president of the United Teachers of Harborfields said:
 "The community should be alerted to the fact of increased violence in our school." Mrs. Aebisher charged that this same student had previously threatened another student with scissors in the science room during the past month.
 By law, according to Mrs. Aebisher, the school officials can only suspend a student for five days and the principal has to request psychological work-ups.
 "Since there were less than five school days remaining until the end of the school year," said school Superintendent Johnson, "the required hearing before school authorities was not held."
 The school authorities say they are waiting for a counselor's report on the female student's behavior to determine if she will be returning to the same school in the fall.
 Mrs. Gruff said she "holds no malice toward the student," but believes the student needs help. Mrs. Gruff said she had later been told of other incidents involving school children with this same student.
 According to Superintendent Johnson, this is the "first incident of the type" that had been reported involving the girl.
 "Teachers should be alerted to behavioral problems of the children and be taught to deal with them," Mrs. Gruff said, adding, that she is concerned about the "safety of the other students."
 
 
 [2]
 Mrs. Gruff's letter reads as follows:
 Dear Mrs. Gruff:
 The (student's name deleted) case is a very sensitive issue and I realize that you are aware of this perhaps more than anyone else. I deplore and regret the hostile, unprovoked attack on you by a student. The school will never condone nor fail to respond properly to such reprehensible behavior. However, your decision to discuss this case with a newspaper reporter is a separate issue and, in my opinion, reflects extremely poor judgment and indiscreet professional behavior.
 As I described to you at our meeting earlier in September, your decision to use a public forum to express your viewpoints had a negative impact in at least two significant areas. First, it interfered with a child's and parents' right to confidentiality. Even though you avoided using the child's name, the incident and the people involved were well known to several hundred other people on the day of the occurance (sic), thereby making anonymity through public media virtually impossible. Second, it interfered with school officials who were attempting to establish a trusting relationship with a child's parents in an effort to arrange for proper treatment.
 Your reasons for using a newspaper to express your feelings in such a sensitive matter do not seem plausable (sic). You were advised by me and by your chairperson of all actions taken prior to your departure for summer vacation. At no time did you communicate to the principal, the superintendent or the Board of Education your feelings that school authorities were not pursuing the case appropriately.
 Sincerely yours,
 /s/ Bernard E. Ryan, Jr.
 Principal.
 Mrs. Aebisher's letter read as follows:
 Dear Mrs. Aebisher:
 The incident in June in which one of our teachers was physically attacked by an Oldfield student is a very sensitive issue requiring the most judicious treatment.
 Your decision to discuss this case with a newspaper reporter, in my opinion, reflects extremely poor judgment and indiscreet professional behavior.
 As I described to you at our meeting earlier in September, your decision to use a public forum to express your viewpoints had a negative impact in an least three significant areas. First, it interfered with a child's and parents' right to confidentiality. Even though you avoided using the child's name, the incident and the people involved were known to several hundred other people on the day of the occurrence, thereby making anonymity through public media virtually impossible. Second, it interfered with school officials who were attempting to establish a trusting relationship with a child's parents in an effort to arrange for proper treatment. Third, it misinformed the community on a potentially volatile issue by claiming, "the community should be alerted to the fact of increased violence in our school." As you pointed out, you based this claim on one child's behavior.
 As Mr. DeGregario, N.Y.S.U.T. Representative, pointed out, had you communicated your feelings directly to the Principal and verified your facts, this issue might have been avoided.
 Sincerely yours,
 /s/ Bernard E. Ryan, Jr.
 Principal.