**Michael LEVIN, Plaintiff–Appellee,**

v.

**Bernard W. HARLESTON, President of The City College of The City University of New York, individually and in his official capacity, and Paul Sherwin, Dean of The City College of The City University of New York, individually and in his official capacity, Defendants–Appellants.**

**No. 796, Docket 91–7953.**

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1992.

Decided June 8, 1992.

Clement J. Colucci, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of State of N.Y., and Toni E. Logue, Asst. Atty. Gen., of counsel), for defendants-appellants.

Scott M. Univer, New York City (Michael P. McDonald, Center for Individual Rights, Washington, D.C., of counsel), for plaintiff-appellee.

Ann H. Franke and Mark D. Laponsky, Washington, D.C. (Robert M. O'Neil, Charlottesville, Va., Arthur Eisenberg, New York Civil Liberties Union, and Norman Dorsen, New York University School of Law, New York City, of counsel), submitted a brief for American Ass'n of University Professors, New York Civil Liberties Union, and Thomas Jefferson Center for Protection of Free Expression, amicus curiae.

Before: VAN GRAAFEILAND, CARDAMONE and McLAUGHLIN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Bernard W. Harleston and Paul Sherwin, the President and Dean of Humanities, respectively, of The City College of The City University of New York, appeal from a judgment entered after a bench trial in the United States District Court for the Southern District of New York (Conboy, J.) in a 42 U.S.C. § 1983 action brought by Professor Michael Levin. The district court found violations of Levin's free speech and due process rights and granted injunctive relief. We affirm in part and vacate in part.

Because the district court's opinion, reported at 770 F.Supp. 895 (S.D.N.Y.1991), contains a lengthy statement of the pertinent facts, our own factual statement will consist more of reference than repetition. This litigation had its inception in three writings of Levin, a tenured professor at the College, which is a public institution funded in part by the State of New York. The first of these was a letter to the New York Times, *id.* at 901; the second was a book review published in Quadrant, an Australian journal, *id.* at 902; the third was a letter published in the American Philosophical Association Proceedings, *id.* at 902–03. Because these writings contained a number of denigrating comments concerning the intelligence and social characteristics of blacks, they elicited a mixed response, much of it critical in nature. As will hereafter appear, appellants' response went beyond simple vocal condemnation.

Over Dean Sherwin's objection, Professor Charles Evans, Chairman of the College's philosophy department, assigned Professor Levin to teach a section of Philosophy 101 during the 1990 spring semester. After the appearance in January 1990 of Levin's letter in the American Philosophical Association Proceedings, Dean Sherwin created an "alternative" section of Philosophy 101 for those of Levin's stu-

dents who might want to transfer out of his class. He wrote to the students in Levin's class on February 1, after the semester had commenced and without notice to Levin, informing them of the alternative section to which they could transfer. *Id.* at 907–08.

Similar action never before had been taken in the history of City College. Moreover, none of Professor Levin's students ever had complained of unfair treatment on the basis of race. Professor Evans objected to the creation of the "shadow class" as immoral, illegal and an unwarranted interference in his discretionary powers as a department chairman. Faculty members of City College, and of other institutions as well, criticized appellants' acts as a violation of academic freedom. *Id.* at 907–09. The district court found that the shadow classes "were established with the intent and consequence of stigmatizing Professor Levin solely because of his expression of ideas," *id.* at 915, and enjoined their continuance, *id.* at 927.

■■■■ In addressing the issue of the "shadow classes", we emphasize the great reluctance with which this court intrudes upon the decisions of a university administration. *Aebisher v. Ryan,* 622 F.2d 651, 654 (2d Cir.1980). Where, however, basic constitutional values have been infringed, this court will not remain silent. "[S]tate colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James,* 408 U.S. 169, 180, 92 S.Ct. 2338, 2345, 33 L.Ed.2d 266 (1972). We review the district court's above-quoted finding under a clearly erroneous standard. *See Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Appellants' argument that the district court could not make this finding, because only Professor Levin's opinion supported it, borders on the frivolous. The district court was free to infer an impermissible intent from all of the facts surrounding the creation of the alternative sections. It did not need an affirmative statement that this intent existed. *See Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048, 48

L.Ed.2d 597 (1976). We do not hesitate in upholding the court's finding as not clearly erroneous.

■■■■ An impermissible purpose does not, of course, end our inquiry if a permissible reason for the governmental act also existed. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Formation of the alternative sections would not be unlawful if done to further a legitimate educational interest that outweighed the infringement on Professor Levin's First Amendment rights. *See Carroll v. Blinken,* 957 F.2d 991, 1001 (2d Cir.1992). However, although appellants contended below that they created the alternative sections because Professor Levin's expression of his theories outside the classroom harmed the students and the educational process within the classroom, the district court saw no evidence that this was a factually valid concern. 770 F.Supp. at 922. Given the complete lack of evidence to support appellants' claim of a legitimate educational interest, we are unable to say that the district court erred.

Appellants contend that "[s]ince, by definition, alternative class sections presuppose that Professor Levin will continue to teach a class section, the creation of such sections cannot, as a matter of law, constitute an infringement of Professor Levin's First Amendment rights." We disagree. Appellants' encouragement of the continued erosion in the size of Professor Levin's class if he does not mend his extracurricular ways is the antithesis of freedom of expression.

■■■■ Because the alternative sections continue to exist, that part of the district court's judgment permanently enjoining appellants "from creating or maintaining 'shadow' or 'parallel' sections of his classes predicated solely upon Professor Levin's protected expression of ideas," *id.* at 927, was warranted and is affirmed. Contrary to appellants' contention, this order is not too ambiguous to be enforced. The constitutionality of a shadow class organized *solely* because of Professor Levin's extracurricular statements was the precise issue that was litigated below. Appellants can-

not be unaware of exactly what they are forbidden from doing. In view of the shadow classes' continued existence, there is nothing abstract about the steps appellants must take to eliminate their chilling effect on Professor Levin's extracurricular activities.

■ Appellants did not content themselves with simply creating a "shadow" class. At a press conference held on March 28, 1990, President Harleston announced the proposed formation of an Ad Hoc Committee on Academic Rights and Responsibilities to determine whether Professor Levin's views affected his teaching ability. President Harleston was reported as saying that "[t]he process of removing a tenured professor is a difficult one." He also was quoted as saying that "[Levin's] views are offensive to the basic values of human equality and decency and simply have no place here at City College." *Id.* at 910–11.

In a subsequent memorandum to the City College community, Harleston formally announced the appointment of the Ad Hoc Committee. The Committee was "to review the question of when speech both in and outside the classroom may go beyond the protection of academic freedom or become conduct unbecoming a member of the faculty, or some other form of misconduct." The words "conduct unbecoming" a member of the faculty mirror the language in the College's By–Laws and the Professional Staff contract warranting imposition of discipline on a faculty member. Harleston was aware of this and deliberately chose the language. *Id.* at 911.

Professor Levin testified that, after he saw the above memorandum, he feared President Harleston was going to fire him. As a consequence, he turned down at least twenty invitations to speak or write about his controversial views. *Id.* at 914. When Levin instituted this lawsuit on September 24, 1990, the Committee still was deliberating. Despite the commencement of the litigation and admonitory letters from Levin's counsel, Harleston never assured Levin that he was not subject to discipline for his statements outside the classroom. When the Committee finally reported, it recommended that no disciplinary action be taken against a faculty member for speech outside the classroom and that no disciplinary proceedings be brought against Professor Levin.

It is settled that governmental action which falls short of a direct prohibition on speech may violate the First Amendment by chilling the free exercise of speech. *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972). However, not every assertion of a chilling effect will be considered a judicially cognizable First Amendment violation. As stated in *Laird, supra,* 408 U.S. at 13–14, 92 S.Ct. at 2325–26, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Appellants' principal contention on appeal is that any chilling effect caused by the creation of the Ad Hoc Committee did not satisfy the requirements of *Laird* because the Committee "was purely advisory, utterly lacking any power to take action" against Levin. We find this argument unpersuasive because, by focusing solely on the Committee's limited power, appellants do not accord sufficient weight to the role played by President Harleston. In contrast to the Committee, Harleston had the authority to bring disciplinary charges. *See* City University of New York By–Laws § 7.2. Professor Levin claims that, when Harleston overrode the Faculty Senate in creating the Committee and deliberately framed the Committee's inquiry into Levin's conduct to mirror the contractual standard for disciplinary action, he conveyed the threat that Levin would be disciplined if he continued voicing his racial theories. 770 F.Supp. at 914.

The district court did not err in finding that the threat of discipline implicit in President Harleston's actions was sufficient to create a judicially cognizable chilling effect on Professor Levin's First Amendment rights. It is not fatal that Harleston never explicitly stated that disciplinary charges would be brought if Levin continued to voice his views. It is the chilling effect on

free speech that violates the First Amendment, and it is plain that an implicit threat can chill as forcibly as an explicit threat. *See, e.g., Trotman v. Board of Trustees of Lincoln Univ.,* 635 F.2d 216, 228 (3d Cir. 1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981). Whether an implicit threat is sufficient to create a chill is substantially a fact-based inquiry. We cannot say that the district court erred in finding that President Harleston's actions conveyed a chilling threat of discipline.

■ Whether this threat was sufficient to warrant the grant of injunctive relief presents a more difficult problem. No disciplinary proceeding or other investigation of Professor Levin is pending, and the Ad Hoc Committee recommended that none be initiated. This does not make the entire controversy moot. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). To demonstrate mootness, appellants bear the heavy burden of showing that "there is no reasonable expectation that the wrong will be repeated." *Id.* This they have not done. The burden nonetheless remains on the moving party to demonstrate the need for injunctive relief. *See* 13A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3533.5, at 326 (2d ed. 1984). This requires a showing of irreparable harm, *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990), "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again," *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983). As stated by this court, "[r]eal and imminent, not remote, irreparable harm is what must be demonstrated." *Carey v. Klutznick,* 637 F.2d 834, 837 (2d Cir.1980) (per curiam). Because Professor Levin has not made this demonstration, he was not entitled to injunctive relief.

■ However, since Levin requested "such other and further relief as the Court may deem just," we conclude that an award of declaratory relief is appropriate.

*See Halkin v. Helms,* 690 F.2d 977, 1007 (D.C.Cir.1982). Declaratory relief does not share injunctive relief's requirement of irreparable harm. A declaration that disciplinary proceedings, or the threat thereof, predicated solely upon Levin's continued expression of his views outside the classroom violates his First Amendment rights will clarify the relations between the parties and eliminate the legal uncertainties that gave rise to this litigation. Accordingly, we vacate that portion of the district court's injunction order dealing with disciplinary proceedings and in its place we declare that the commencement, or threat thereof, of disciplinary proceedings against Professor Levin predicated solely upon his protected speech outside the classroom violates his First Amendment rights.

■ Appellants' final disputed response to Professor Levin's writings was one of inaction rather than action, *i.e.,* their alleged failure to take steps to prevent what they themselves describe as "undisputed facts concerning disruptions" of Levin's classes. The district court devoted several pages of its opinion to a detailed description of these disruptions and the College's responses or lack thereof. It condemned with strong language the "appalling behavior of the shouters, the intimidators and the bullies." 770 F.Supp. at 917. We join in this condemnation. However, we are concerned that the district court has not adequately explicated a legal basis for holding that appellants' response or lack of response to the student disruptions violated Professor Levin's constitutional rights. The basis for this concern is the undisputed evidence that the College's response to the disruption of Levin's classes was no different than that accorded to other instances of student disruption. Accordingly, although under some circumstances a state may be guilty of an equal protection violation if it denies disfavored individuals protections and benefits that it freely grants to others, *see DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 197 n. 3, 109 S.Ct. 998, 1004 n. 3, 103 L.Ed.2d 249 (1989), that is not what happened in the instant case. Simply stated, there is no evidence

that the College treated student demonstrations directed at Professor Levin any differently than other student demonstrations. Whether this failure to discipline is a wise policy is not the issue herein. Whether the practice breaches a tort or contractual obligation that the College owes its teachers also is beyond the scope of our review. We limit our review to whether Professor Levin's constitutional rights were violated, and we are persuaded that they were not. This is apparent from the language of the district court's order, which directs appellants to take "reasonable steps" to prevent disruption of Professor Levin's class. We are not sure what steps would be "reasonable", and we are satisfied that appellants would be equally in the dark. *See Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 246–47 (2d Cir.1972). The portion of the district court's order dealing with the response to student disruptions therefore is vacated.

Because appellee Levin has substantially prevailed in this court, he is awarded the costs of appeal.