Leonard **JEFFRIES**, Plaintiff,

v.

Bernard **HARLESTON**,
et al., Defendants.

No. 92 CIV 4180 (KC).

United States District Court,
S.D. New York.

March 31, 1993.

**737**

Joseph Fleming, New York City, for plaintiff.

Kathie Ann Whipple, Asst. Atty. Gen., New York City, for defendants.

## ORDER

CONBOY, District Judge:

Plaintiff, a tenured professor at the City College of the City University of the City of New York, has filed a complaint against officials and trustees of the College and the University asserting, in substance, that his position as Chairman of the Black Studies Department, which he had held for twenty years, was terminated as a result of a speech he gave in Albany, New York on July 20, 1991. This speech was widely reported in the media and characterized by some commentators as being anti-semitic and denounced by numerous officials and faculty members of the College and University. Professor Jeffries seeks an order declaring that his first amendment right to free speech has been abridged and that his civil rights have been violated by the defendants, and directing the defendants to restore him to the chairmanship.

All parties apparently are in agreement that Professor Jeffries' Albany speech was in content and substance a form of expression wholly protected by the First and Fourteenth Amendments of the Constitution. The defendants assert that the speech, and by implication, the widespread criticism of the speech, the speaker and the College and University officials who tolerated the continuing presence of Professor Jeffries on the faculty, played no role in the termination of his chairmanship. Professor Jeffries' stewardship of his chairmanship provided a basis for his dismissal as chairman, according to the defendants, and they point to a post-speech investigation conducted by the Provost and Dean of the College to support this finding. The plaintiff asserts that the speech was the sole, or at least, the principle motivating factor behind the action of the College and University officials that caused the loss of his chairmanship.

Professor Jeffries points to the following sequence of events in urging the Court to grant him summary judgment:

a) plaintiff's re-election to the Chairmanship of his Department by the faculty thereof;

b) acceptance of plaintiff's re-election, without reservation or stipulation, as of July 1, 1991, by President Harleston with the concurrence of Dean Rosen and Provost Pfeffer;

c) plaintiff's July 20, 1991 Speech;

d) defendants immediate condemnation of plaintiff because of his Speech;

e) President Harleston's appointment of Provost Pfeffer to review the plaintiff's performance as Chair as a result of the Speech;

f) Faculty Senate rejection of any punitive action against plaintiff at its September 19, 1991 meeting;

g) Provost Pfeffer's October 4, 1991 Report to Harleston, supported by Dean Rosen's review, confirming that plaintiff was functioning well as Chairman;

h) President Harleston's direction to Provost Pfeffer and Dean Rosen that they continue to review plaintiff's Chairmanship;

i) Board of Trustees October 28, 1991 vote limiting plaintiff's appointment as Chair to one (1) year rather than customary three year term;

j) November decision by defendants to remove plaintiff;

k) March 1992 vote by Board of Trustees removing plaintiff as Chair, effective July 1, 1992.

In support of his motion for summary judgment, plaintiff submits an affidavit, dated February 24, 1993, in which he notes the report of Provost Pfeffer, dated October 4, 1991, to President Harleston of the College. There, the Provost stated that "although you and others in the administration might have had questions concerning Professor Jeffries' performance as Chair prior to July, 1991, Presidential approval of his re-election as Chairperson (without any stipulations), appears to negate the relevancy of any previous information concerning his performance." Professor Jeffries further cites the September 19, 1991 Memo of Dean Rosen to Provost Pfeffer, specifically, the following passage: "I have decided to limit my observations to Professor Jeffries actions as Chair since his re-election to that post last spring: a re-election which was, as you know, accepted by President Harleston. I must assume that the acceptance of the outcome of that election implies that neither the words or deeds of Professor Jeffries prior to last spring provided sufficient reason to override the vote of the department at that time."

In light of these statements about Professor Jeffries' performance *before* the speech, he argues that defendants' are limited to a review of his performance *after* the speech, and that defendants can point to no misconduct or deficiency after the date of the speech that could serve as a justification for the termination of his chairmanship.

Accordingly, plaintiff points out, and defendants do not dispute, that the post-speech inquiry by Provost Pfeffer and Dean Rosen was ordered by President Harleston, to explore the *effect* of the speech on the ability of Professor Jeffries to effectively perform his duties as chairman. Notwithstanding the fact that the inquiry by Provost Pfeffer and Dean Rosen found no basis to conclude that the speech had impeded Dr. Jeffries in the carrying out of his duties, defendant Harleston's letter to the plaintiff, dated October 29, 1991, stated that he was still concerned about the speech and would continue to monitor the professor's actions.

For purposes of the motion before us, plaintiff urges that he is entitled to summary judgment because it is undisputed that as of July 1, 1991, there existed no reason to deny Professor Jeffries his duly elected three-year term as Chairman of the Black Studies Department, that the cause of the reviews and other actions taken by the College leadership and University Trustees against Professor Jeffries was his speech of July 20, 1991 and that the justification offered by the defendants for the dismissal of Professor Jeffries, that "black scholars in the field" had criticized plaintiff's stewardship of his department, is not supported by the record. *See*, affidavit of Joseph Fleming, dated February 24, 1993, 2–3.

Defendants insist that they are entitled to summary judgment, principally upon the grounds that, following the July 20, 1991 speech "Dean Rosen and Provost Pfeffer came to the conclusion that plaintiff's performance as chair had deteriorated in a variety of respects. They became aware of a confrontation with another member of the faculty, delays in an important faculty search, deficiencies concerning the monitoring of grading, teaching of classes, and maintenance of records, failure to attend meetings, and other problems. During the same period, plaintiff confronted Harleston in a manner Harleston deemed inappropriate. He and the chancellor also became aware of allegations of inappropriate conduct by plaintiff at City College, one by a reporter, one by a student." Defendants' Statement Pursuant to Local Rule 3(g) dated February 11, 1993, ¶ 17.

It is apparent from an examination of the records and documents submitted by the Attorney General on behalf of the defendants to support the aforementioned claims, that these materials could be found by a jury to have been assembled selectively for the self-serving purpose of creating an after the speech justification for removing Professor Jeffries from his chairmanship. This is so because much of what is relied upon to justify removal of Professor Jeffries occurred before the Speech, and did not impede his reappointment to the chairmanship three weeks before the speech. We also observe

that ritualistic incantation of the business records exception to the hearsay rule does not meet problems of multi-tiered hearsay in such documents.

The central issue in this case, as the Attorney General concedes, is the defendants' motives. Memorandum of Law in Opposition to Plaintiff's Motion For Summary Judgment and in Support of Defendants' Cross–Motion For Summary Judgment, dated February 11, 1993, 10–11 ("Defendants' Memo").

Claims involving First Amendment rights of public employees are governed by *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and its progeny, which require, first, that the speech at issue "be fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *Ezekwo v. New York City Health and Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.1991).

Second, the employee must prove that the speech was a substantial or motivating factor in the adverse employment decision. *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Ollman v. Toll,* 518 F.Supp. 1196 (D.Md.1981), *aff'd,* 704 F.2d 139 (4th Cir.1983).

Third, the court must balance the interests of the employee, "as a citizen, in commenting upon matters of public interest and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering, supra,* 391 U.S. at 568, 88 S.Ct. at 1734–35. *See also Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987); *Ezekwo, supra,* 940 F.2d at 780.

Fourth, the government employer must be given an opportunity to prove that it would have reached the same decision even without considering the protected conduct. *Id.*

 Cases requiring a *Pickering* analysis are, as the Attorney General concedes, ill-suited for summary judgment. Defendants' Memo, 1. *See, Aebisher v. Ryan,* 622 F.2d 651, 654–55 (2d Cir.1980). Furthermore, as the underlying facts are quite unsettled and even contradictory in the Attorney General's own submission, we are not satisfied that a showing that defendants are entitled to a finding of qualified immunity at this stage of the proceedings has been made.

Nor are we satisfied that the record supports plaintiff's motion for summary judgment, given the factual dispute over motive that is at the heart of the case.

Accordingly, the cross-motions for summary judgment are in all respects denied. The case will proceed to trial on April 20, 1993. This is a final and irrevocable trial date, and no adjournment will be granted.

SO ORDERED.