G & V LOUNGE, INC., a Michigan corporation, Plaintiff–Appellant,

v.

MICHIGAN LIQUOR CONTROL COMMISSION, a state agency; Maxine Perry, chairwoman of the Michigan Liquor Control Commission; and City of Inkster, a Michigan municipal corporation, Defendants–Appellees.

No. 93–1447.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1994.

Decided May 12, 1994.

Robert A. Sedler (argued), Wayne State University Law School, Detroit, MI, Robert D. Horvath (briefed), Southfield, MI, for G & V Lounge, Inc.

Thomas J. Emery (argued), Office of the Atty. Gen., Michigan Liquor Control Com'n, Lansing, MI, Arthur E. D'Hondt (briefed), Office of Atty. Gen., Habeas Corpus Div., Lansing, MI, for Michigan Liquor Control Com'n and Maxine Perry.

Milton Spokojny (argued and briefed), Farmington Hills, MI, for City of Inkster.

Before: JONES, NELSON, and SUHRHEINRICH, Circuit Judges.

JONES, Circuit Judge, delivered the opinion of the court, in which SUHRHEINRICH, Circuit Judge, joined. NELSON, Circuit Judge (pp. 1079–80), delivered a separate opinion concurring in judgment.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant, a corporation that operates the "Mustang Lounge" in Inkster, Michigan, alleges that Defendant–Appellee, the City of Inkster, violated Plaintiff's First Amendment rights when it threatened to seek revocation of Plaintiff's liquor license and entertainment permit if Plaintiff presented topless dancing at the bar. Plaintiff further alleges that Defendant–Appellee, the Michigan Liquor Control Commission ("MLCC"), has declared that it will revoke the license and permit at the municipality's request so long as the municipality affords Plaintiff rudimentary due process, and that this policy of deferring to a municipality also violated Plaintiff's First Amendment rights. The district court denied Plaintiff's request for a temporary restraining order and preliminary injunction, and dismissed the action for lack of a present case or controversy. We reverse this dismissal, holding that there is a present case or controversy, and we remand the matter for reconsideration of whether a preliminary injunction should issue.

## I.

Under the Michigan Constitution and the Michigan Liquor Control Act, the MLCC is vested with complete control over alcoholic beverage sales in Michigan. Mich. Const., art. 4, § 40; Mich.Comp. Laws § 436.5. A regulation promulgated by the MLCC provides that no establishment with a liquor license shall permit dancing or other forms of entertainment without a permit, and that no entertainment permit shall be issued without the approval of the chief local law enforcement officer with jurisdiction over the establishment, the local legislative body, and the commission itself. MLCC R. 436.1407. The regulation includes no standards governing local approval of a requested permit. Another MLCC regulation provides that liquor license holders shall not permit within their establishments exposure to the public view of "the pubic region, anus, or genitals or ... displays [of] other types of nudity prohibited by statute or local ordinance." MLCC R. 436.1409. Yet another regulation prohibits within liquor licensed establishments the performance or simulated performance of "sexual intercourse, masturbation, sodomy, bestiality, fellatio, or cunnilingus." MLCC R. 436.1411. Significantly, however, no MLCC regulation or state statute prohibits topless dancing in a licensed establishment, nor does Inkster have an ordinance prohibiting toplessness *per se*.

In 1979, Soco Enterprises, Inc., entered into an agreement with Inkster providing that, in exchange for the city's approval of Soco's request for a liquor license, Soco agreed that it would not permit any topless entertainment on its premises. J.A. at 69–70. In 1983, Plaintiff applied for a transfer of ownership of the liquor license and dance entertainment permit issued to Soco Enterprises, Inc. Inkster and its police chief recommended the requested transfer, and the MLCC approved it. Since 1983, Plaintiff has offered entertainment in the form of live bands and dancing.

On September 24, 1992, Plaintiff informed the city that it intended to offer topless dancing. On December 7, 1992, Inkster enacted Ordinance 710, section 10 of which lists the criteria upon which the city council will recommend non-renewal or revocation of a liquor license or entertainment permit. Two of these criteria are that:

(i) the operation of the licensee's business or the circumstances and conditions surrounding the licensee's business have changed and/or the type or nature of entertainment conducted by the licensee has changed or is proposed to be changed;

(j) the licensee has failed to comply with any general or specific condition imposed pursuant to the granting of the license and/or has changed or deviated from any of the statements or represen-

tations made in the application for license/permit and/or in the investigation for the issuance, renewal or transfer of license/permit. . . .

J.A. at 23 (quoting Ord. 710, § 10(2)(i) and (j)).

On January 5, 1993, the city's attorney wrote a letter to Plaintiff stating in pertinent part that:

if you should attempt to offer any adult entertainment on the premises, the Inkster City Council may recommend to the Michigan Liquor Control Commission that it take action to not renew and/or revoke your current liquor license and/or dance entertainment permit. . . .

Your intentions to change the nature of the type of entertainment to be offered at the Mustang Lounge violates your original stated intentions as well as the provisions of Ordinance No. 710. . . . Section 10, . . . subsections (i) and (j). . . .

In addition, . . . your proposed use violates the provisions of a previously executed agreement dated May 16, 1979 between the City of Inkster and Soco Enterprises, Inc. wherein the Licensee . . . agreed not to permit any adult-type entertainment at the establishment. As the transferee of this license, G & V Lounge, Inc. is the successor to this agreement.

In conclusion, if you proceed with your stated intentions of offering any adult-type entertainment at the aforestated location, the City of Inkster will take any and all necessary legal measures to prevent this from occuring [sic].

J.A. at 25–26. The letter explicitly equated "adult entertainment" with topless dancing.

On February 8, 1993, Plaintiff filed its complaint in the instant suit, alleging that it has refrained from presenting topless dancing solely because of Inkster's threats to take action that would jeopardize Plaintiff's liquor license and entertainment permit. Plaintiff sought a declaratory judgment stating that Inkster's threat and the MLCC's policy of revoking a license or permit at the city's request violate Plaintiff's First Amendment rights. Plaintiff also sought a temporary restraining order and a preliminary injunc-

tion that would prohibit Defendants from taking the threatened action against Plaintiff's license and permit.

At the preliminary injunction hearing on March 1, 1993, the district court determined that there was no present case or controversy between the parties because Plaintiff had not yet offered topless dancing, and so Defendants had not yet taken any action against Plaintiff. The court denied Plaintiff's motions for a temporary restraining order and preliminary injunction, and dismissed the case. This appeal followed.

## II.

We first address the question of whether Plaintiff has standing to bring this action. Article III, Section 2 of the United States Constitution gives the federal courts jurisdiction only over cases and controversies. The Supreme Court has set forth a three prong test for determining Article III standing:

It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

*Northeastern Florida Contractors Chapter of the Associated General Contractors of America v. Jacksonville,* —— U.S. ——, —— – ——, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586 (1993) (quotations and citations omitted). "The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements." *Whitmore v. Arkansas,* 495 U.S. 149, 154–55, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990).

Plaintiff has specifically alleged three separate injuries-in-fact. First, Plaintiff alleges that the MLCC's policy of deference to local governments with regard to the nonrenewal or revocation of liquor licenses and entertainment permits, and the city's Ordinance 710, § 10(i) and (j), are overbroad and result in a prior restraint of activities protected by the First Amendment.[1] This prior restraint constitutes a concrete and particularized actual injury in fact. It is well established that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988); *see also Doran v. Salem Inn*, 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) (holding that it was firmly established that owners of topless bar had standing to challenge on the basis of overbreadth an ordinance banning topless dancing, even though they had not yet been prosecuted under the law); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969) ("The Constitution can hardly be thought to deny to one subjected to the restraints of [a licensing law] the right to attack its constitutionality, because he has not yielded to its demands."); *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 737–38, 13 L.Ed.2d 649 (1965) ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license."); *Lovell v. Griffin*, 303 U.S. 444, 452–53, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938) ("As the ordinance [providing for unbridled licensing discretion] is void on its face, it was not necessary for appellant to seek a permit under it."). By the same token, in the present case, Plaintiff does not have to wait until his license is revoked to have standing to challenge the allegedly overbroad licensing scheme that would allow its revocation.

Second, the January 5, 1993, letter from the City of Inkster to Plaintiff threatens that, if Plaintiff tries to present topless dancing, then the city "will take any and all necessary legal measures to prevent this from occurring," including "action to not renew and/or revoke [Plaintiff's] current liquor license and/or dance entertainment permit." The revocation or non-renewal of Plaintiff's license or permit would be a distinct and palpable injury in fact, which, given the MLCC's policy of complete deference to local governments regarding licenses and permits, is indeed imminent. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974) (holding that, where petitioner had been warned to stop handbilling or else he would likely be prosecuted, injury in fact was indeed imminent; "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

---

1. Even though, pursuant to the Twenty–First Amendment, a state has authority to prohibit or to regulate topless dancing in liquor-licensed establishments, *see, e.g., New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 718, 101 S.Ct. 2599, 2601–02, 69 L.Ed.2d 357 (1981) (per curiam), and even though a local government may have the power to prohibit public toplessness, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, ———–———, 111 S.Ct. 2456, 2461–63, 115 L.Ed.2d 504 (1991) (plurality), it nevertheless remains true that topless dancing is (still) constitutionally protected under the First Amendment. *Barnes*, 501 U.S. at ———, 111 S.Ct. at 2460; *Bellanca*, 452 U.S. at 718, 101 S.Ct. at 2601–02; *Doran v. Salem Inn*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975); *California v. LaRue*, 409 U.S. 109, 118–19, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972). *LaRue*, for example, expressly provides that the Twenty–First Amendment does not *abrogate* the First Amendment; rather it merely "strengthens" the case for upholding state regulations in the area. of liquor regulation. 409 U.S. at 115, 93 S.Ct. at 395; *see also Craig v. Boren*, 429 U.S. 190, 207, 97 S.Ct. 451, 462, 50 L.Ed.2d 397 (1976); *Felix v. Young*, 536 F.2d 1126, 1131 (6th Cir.1976) (holding that the First Amendment was not abrogated by the Twenty–First Amendment, but rather that "state regulations in the area of the Twenty–First Amendment are entitled to an enhanced presumption of validity.").

Finally, the threat to take away Plaintiff's license or permit has already chilled Plaintiff from presenting a First Amendment protected activity to the public. This is also a distinct and palpable injury in fact, and is actual rather than merely imminent. It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact. *See, e.g., Levin v. Harleston,* 966 F.2d 85, 89–90 (2d Cir.1992) (holding that a merely implicit threat to fire a professor for his controversial views chilled professor's First Amendment rights sufficiently to confer standing); *Doe v. University of Michigan,* 721 F.Supp. 852 (E.D.Mich. 1989) ("It is not necessary ... that an individual first be exposed to prosecution in order to have standing to challenge a statute which is claimed to deter the exercise of constitutional rights."). *Accord NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions.").

These three separate injuries are each directly traceable to the actions of the city and the deferential policies of the MLCC, and are redressable by a favorable decision in the instant litigation. Plaintiff specifically set forth all of these facts in its complaint. Thus, a case or controversy exists, and the district court erred to hold otherwise.

### III.

### A.

In determining whether a preliminary injunction should issue, a court must consider the following four factors:

1. whether the movant is likely to prevail on the merits;

2. whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction;

3. whether a preliminary injunction would cause substantial harm to others; and

4. whether a preliminary injunction would be in the public interest.

*International Longshoremen's Assoc. v. Norfolk S. Corp.,* 927 F.2d 900, 903 (6th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 38 (1991). The district court is required to make specific findings regarding each of the four factors, unless fewer are dispositive of the issue. *Id.* We review only for abuse of discretion. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1227 (6th Cir. 1985). An abuse of discretion exists only when the reviewing court is firmly convinced that a mistake has been made. *In re Bendectin,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152, 156–57 (6th 1988).

### B.

The district court's primary reason for denying Plaintiff's motion for preliminary injunction appears to be its holding that, because there is no present case or controversy, Plaintiff could not prevail on the merits. In light of the preceding section, this reason is invalid. However, the court below offered four additional reasons in support of its denial of Plaintiff's motion. We now consider each of these in turn.

### 1.

First, the court held that, pursuant to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), it would have to abstain from deciding the merits of the case because sufficient state remedies are available to Plaintiff. According to the lower court, *Parratt* stands for the proposition that "all available state remedies [should] be exhausted or addressed as much as is reasonable before the Court steps in to make findings that the state is behaving unconstitutionally." J.A. at 182. However, this is a gross mischaracterization of *Parratt.* Rather, the *Parratt* Court held that, where a state actor negligently deprives an inmate of his property, postdeprivation remedies made available by the state can satisfy the requirements of procedural due process. 451 U.S. at 537–38, 101 S.Ct. at 1914. The court below could hardly have found a more inapposite case to apply to the present case,

which does not even involve a procedural due process challenge.

■ Moreover, the proposition of law that the lower court purported to derive from *Parratt* is demonstrably false, for it is well established that the federal courts are an appropriate forum for the redress of constitutional violations, regardless of the adequacy of state courts as an alternative forum. *See Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967) ("We yet like to believe that wherever Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum."); *Gay v. Board of Registration Comm'rs,* 466 F.2d 879, 885 (6th Cir.1972) ("A federal court may not simply disregard a constitutional challenge by invoking abstention, even though a remedy may also lie in state courts.").

■ Inkster suggests that the *Younger* doctrine bolsters the lower court's holding that it should abstain in the present case. However, *Younger* simply does not apply in the present case. The *Younger* doctrine requires a federal court to refrain from ruling on a proceeding before it where there is a parallel criminal proceeding in state court. *Younger v. Harris,* 401 U.S. 37, 49, 91 S.Ct. 746, 753, 27 L.Ed.2d 669 (1971). In the present case, there is no parallel state court proceeding. As the Supreme Court explained in *Doran,* 422 U.S. at 930, 95 S.Ct. at 2567:

> The principle underlying *Younger* and *Samuels [v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) ] is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in *Steffel [v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ], a plaintiff may chal-

lenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction.

### 2.

Second, the court held that Plaintiff could not prevail on the merits because it waived its First Amendment rights in a 1983 agreement. We presume that the court was referring to the 1979 agreement between Soco Enterprises and the city, to which Plaintiff allegedly became subject in 1983.

■ The court's holding flatly contradicts well established Supreme Court precedent to the effect that a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, especially one's right to free expression. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

■ In the present case, the city's 1979 contract with Soco Enterprises, Inc. constituted an attempt to condition Plaintiff's receipt of a benefit upon Plaintiff's waiver of its right to free expression, contrary to the principles set forth in *Perry* and *Keyishian.* As such, the contract is unenforceable.[2]

---

2. The city erroneously assumes not only that the contract is enforceable, but also that the city is

entitled to what amounts to specific performance of the contract's terms. The city offers no argu-

██ Apparently, the contract is unenforceable under Michigan law, too. A similar agreement was at issue in *Bundo v. City of Walled Lake*, 53 Mich.App. 317, 218 N.W.2d 869, 870 (1974), *aff'd on other grounds*, 395 Mich. 679, 238 N.W.2d 154 (1976). The court explained that:

> As to the agreement plaintiff signed with defendant city to refrain from presenting topless dancing and utilizing topless waitresses, we think it of no legal force. Legal or illegal conduct and activity in liquor licensed premises derive from statute and regulation, not from agreement between the licensee and the community. So that our position may not be misunderstood we emphasize that we would hold the same way in this case whether defendant city had proscribed coonskin caps or striped dinner jackets instead of the particular attire involved.

*Id.*

Inkster argues at length that Plaintiff waived its First Amendment rights, citing a series of cases that discussed the possibility of one's waiving one's own constitutional rights. Inkster Br. at 24–28. However, all of these cases but one are inapposite; they do not involve a government actor's forcing the purported "waiver" by making it a pre-

condition for the receipt of a benefit. The one case that does involve a government actor, *Sambo's Restaurants, Inc. v. City of Ann Arbor*, 663 F.2d 686 (6th Cir.1981), does not support Inkster's position.[3]

### 3.

██ The court below also held that, because Plaintiff wants to present topless dancing as a money-making venture, the injury, if any, is not irreparable, but can be compensated by monetary damages. The court cited to no authority in support of this proposition. J.A. at 184–85.

This proposition is flatly inconsistent with well-settled precedent. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976) (plurality); *accord id.* at 374–75, 96 S.Ct. at 2690 (Stewart, J., concurring); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir.1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") (citing *Elrod* ); *id.* ("[V]iolations of first amendment rights con-

---

ment or citation of authority in support of this proposition, thereby ignoring the fact that specific performance is an extraordinary remedy under Michigan law. *Barbers Local 552, Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors Int'l Union of America v. Sealy*, 368 Mich. 585, 118 N.W.2d 837, 839 (1962) ("The remedy of specific performance is an extraordinary one granted only in unusual cases to prevent irreparable harm. It is a matter of grace and not of right."). Even if the city's 1979 contract with Soco Enterprises, Inc. were enforceable, this would imply only that the city could potentially recover monetary damages via a breach of contract action. It would not follow that the contract constituted a *waiver* of Plaintiff's First Amendment rights.

**3.** In *Sambo's*, the parties had agreed that the city would approve a site plan that would enable the corporation to construct a restaurant, on the condition that the corporation would not name the restaurant, "Sambo's." (Many find this name to be offensive or racially insensitive.) Some years later, the corporation decided to change the restaurant's name back to "Sambo's" and the city tried to enforce its agreement. *Id.* at 687–89. The city argued that the corporation had waived its First Amendment right to use the

offensive name. *Id.* at 690. The fractured appellate panel issued three separate opinions. Judge Celebrezze argued that the contract was unenforceable due to lack of consideration, because the city was statutorily obliged to approve the site plan regardless of the restaurant's name. *Id.* at 691–92. Judge Merritt argued that the contract was unenforceable because the city had engaged in an illegal form of economic coercion or duress to induce the company to waive its constitutional right to use the offensive name. *Id.* at 695 (Merritt, J., concurring). Judge Keith argued that the contract was enforceable; that there was sufficient consideration and that there was no coercion or duress. *Id.* at 697–708 (Keith, J., dissenting). However, none of the judges on the panel considered the line of cases represented by *Perry* and *Keyishian*, nor did they consider any argument to the effect that a government may not condition the receipt of a benefit on an agreement to refrain from exercising one's First Amendment rights. Had the panel considered such an argument, it would have bolstered the conclusions of two of the judges that the contract containing the purported "waiver" was unenforceable.

stitute per se irreparable injury.") (quoting *Cate v. Oldham,* 707 F.2d 1176, 1188 (11th Cir.1983); *Johnson v. Bergland,* 586 F.2d 993, 995 (4th Cir.1978)). *Elrod* and *Newsom* did not make exceptions for expressive speech intended as a money-making venture.[4]

**4.**

■■■ As for the other two factors that a court is obliged to consider in deciding whether a preliminary injunction should issue, the lower court had only this to say: "The public interest and appropriate controls of liquor establishments has been affirmed on numerous occasions in the State's interest, and public health and safety." J.A. at 185. Whatever this means, it is clear that the court did not consider the fact that it is always in the public interest to prevent the violation of a party's constitutional rights. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 383, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979); *Planned Parenthood Association v. City of Cincinnati,* 822 F.2d 1390, 1400 (6th Cir.1987). Moreover, we do not see any connection between the issuance of a preliminary injunction in the present case, and concerns regarding public health and safety. We agree with the lower court, of course, that the city and the public have an interest in the state's power to control liquor traffic, but the extent to which the particular injunction sought by Plaintiff would burden this interest is unclear.

What is clear, however, is that Defendants' argument regarding the public interest factor rested solely upon the government's interest in regulating liquor licensing in general. MLCC's Br. at 25; Inkster's Br. at 29–30. This exaggerates the scope of the injunctive relief that Plaintiff seeks. Plaintiff does not want to enjoin liquor licensing in general; it seeks, for the time being, only to prevent the city and state from regulating one liquor license in particular.

**C.**

For the foregoing reasons, we hold that all of the lower court's reasons for denying Plaintiff's motion for preliminary injunction are invalid. It follows that the court abused its discretion when it denied the motion.

Plaintiff asks us to direct the court below to issue the injunction. This we decline to do. Rather, we instruct the district court on remand to reconsider whether Plaintiff's motion for preliminary injunction should be granted.

**IV.**

Therefore, we reverse the district court's holding that there is no present case and controversy, vacate the court's order to dismissal and its denial of Plaintiff's motion for preliminary injunction, and we remand for further proceedings in accordance with this opinion.

DAVID A. NELSON, Circuit Judge, concurring in judgment.

As far as the federal Constitution is concerned, there is no reason why the State of Michigan or the City of Inkster cannot, pursuant to properly drafted laws or ordinances, prohibit saloonkeepers from placing barebreasted women dancers on public exhibition. In light of *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), indeed, it appears that such a prohibition could pass federal constitutional muster even if extended to the proprietors of "bookstores" or other public places where liquor is not served.

Under current Supreme Court doctrine, however, nude dancing is considered "expressive conduct" that comes "marginally," at

---

4. Inkster tries to bolster the district court's conclusion by citing to *Hohe v. Casey,* 868 F.2d 69 (3d Cir.1989), but *Hohe* only holds that "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction" where the harm only inhibits First Amendment rights incidentally. *Id.* at 73. Because the First Amendment violation alleged in the Plaintiff's complaint can hardly be considered "incidental," *Hohe* is not applicable to the present case. Inkster also argues that, in order to show irreparable injury, Plaintiff must show how much money he loses by not offering topless dancing. Inkster's Br. at 23 (citing *Frejlach v. Butler,* 573 F.2d 1026 (8th Cir.1978)). Both of the city's contentions are inconsistent with *Elrod* and *Newsom.*

least, "within the outer perimeters of the First Amendment...." *Id.* at ——, 111 S.Ct. at 2460 (plurality opinion of Rehnquist, C.J.) That fact, it seems to me, makes the central issue in this appeal a very easy one to decide.

The central issue is whether the proceeding instituted by plaintiff G & V Lounge, Inc., constituted one of the "Cases" or "Controversies" to which the federal judicial power extends—and to which the judicial power is limited—under Article III, § 2 of the United States Constitution. The district court determined that "there presently is no case or controversy between the parties," the plaintiff not having begun to stage the topless dancing it wanted to present, and the court therefore dismissed the matter for want of any constitutional power to adjudicate it. This was error.

It was error because the licensing scheme at issue here (1) was arguably designed for application to expressive activities protected by the First Amendment, and (2) was arguably overbroad. "In the area of freedom of expression," as Judge Jones has noted in Part II of his opinion, "it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, *whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.*" *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 737–38, 13 L.Ed.2d 649 (1965), as quoted in *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 756, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) (emphasis added by the *Lakewood* Court). And "even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 933, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648 (1975). One need go no further than this to decide the main question presented in the case at bar, but I agree with the additional reasons given by Judge Jones for concluding that a case or controversy does exist here.

I agree also that the district court must take another look at the plaintiff's application for a preliminary injunction. The district court offered some comments from the bench on the question of whether the plaintiff would have been entitled to an injunction if a case or controversy had been shown to exist, but because the court had already announced its determination that there was no case or controversy, the comments on the injunction were somewhat extraneous. Now that a justiciable case has been held to exist, I am confident that the district court will give more systematic thought to the injunction question—a question that appeared purely hypothetical when the court made its original observations. I would not want to prejudge the question, because I assume that the defendant city may well have amended its ordinances by the time the court ultimately decides whether an injunction should issue.